UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DINA M. ROBLES BUSH** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-1654** |
| | * | |
| **THORATEC CORPORATION, ET AL.** | * | **SECTION "L"(3)** |

## ORDER & REASONS

The Court has pending before it Plaintiff Dina M. Robles Bush's Motion to Remand (Rec. Doc. 14) and Defendant University Healthcare System, LLC, doing business as Tulane University Medical Center and Clinic ("Tulane")'s Motion to Dismiss (Rec. Doc. 13). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

### I.    BACKGROUND

This case arises out of the death of Pete Bush, a recipient of the Thoratec HeartMate II Left Ventricular Assist System, a surgically-implanted heart pump manufactured by Defendant Thoratec Corporation. According to the allegations in the petition, Mr. Bush had the LVAS implanted on September 26, 2008, at the VA Hospital in Richmond, Virginia. On or about October 24, 2008, the Food and Drug Administration issued a notice regarding the LVAS due to issues with "wear and fatigue of the percutaneous lead connecting the [device] to the system controller [which] may result in damage that could interrupt pump function, require re-operation to replace the pump and potentially result in serious injury and death."

Mr. Bush later returned to New Orleans with his wife, Plaintiff Linda Robles Bush. He visited the Heart Failure Department at Tulane University Medical Center ("Tulane") from early

2009 through May, 2010 to check the LVAS.  Plaintiff alleges that Tulane did not inform Mr. Bush of the notice issued regarding his implanted LVAS.  On May 4, 2010, Mr. Bush's LVAS cased functioning, allegedly resulting in his cardiac arrest and death.  Plaintiff alleges that Tulane arranged for an autopsy and that the LVAS was removed and sent to Thoratec for evaluation.  Thoratec has not disclosed the findings of that evaluation, but Plaintiff alleges that the evaluation demonstrates that the pump stopped due to the defect described in the FDA notice.

Plaintiff Linda Robles Bush, the decedent's widow, filed suit in Civil District Court for the Parish of Orleans against Defendants Thoratec, a California citizen, and University Healthcare System, LLC, d/b/a Tulane University Medical Center and Clinic, a Louisiana citizen.  As to Thoratec, Plaintiff alleges that Thoratec misrepresented the safety of the LVAS and knew of the risk of failure that caused the decedent's death but failed to notify Plaintiff or decedent of the dangerous defects.  As to Tulane, Plaintiff alleges that Tulane failed to test the LVAS to detect damage as set forth in the FDA recall notice and intentionally failed in a duty to inform him of the known defect.  As to both, Plaintiff alleges that Thoratec and Tulane knowingly concealed defects from the FDA and concealed the results of an autopsy analysis from Plaintiff.

Plaintiff filed suit on or about May 5, 2011.  Thoratec and Tulane were served on May 16, 2011.  On July 1, 2011, Tulane filed a dilatory exception of prematurity in Civil District Court, contending that Plaintiff alleged medical malpractice claims but had not completed the pre-lawsuit procedures required by the Louisiana Medical Malpractice Act.  On July 14, 2011, Thoratec removed to this Court.  Although both Plaintiff and Tulane are alleged to be citizens of Louisiana, Thoratec contends that Tulane's dilatory exception revealed that Plaintiff stood no

chance of recovery against Tulane and that Tulane had been improperly joined to defeat diversity jurisdiction.

## II.     PRESENT MOTIONS

The Court has pending before it two interrelated motions.

<u>First</u>, Plaintiff moves to remand on two grounds. She contends that Thoratec's notice of removal was untimely because Thoratec removed more than thirty days after being served with the state court petition as required by 28 U.S.C. § 1446(b). Plaintiff also argues that she did not improperly join Tulane, because she has stated claims that are not governed by the Louisiana Medical Malpractice Act ("MMA") and thus does not have to proceed through a required Medical Review Panel before filing suit.

<u>Second</u>, Tulane moves to dismiss on the grounds that it was a qualified healthcare provider under the MMA, that Plaintiff has failed to proceed through the necessary Medical Review Panel process on her claims for malpractice, and that her suit is therefore premature. This issue is the converse of Plaintiff's second basis for remand.

## III.    LAW AND ANALYSIS

### A.     **Plaintiff's Motion to Remand (Timeliness Argument)**

Plaintiff's first argument in favor of remand is that Thoratec did not timely file its notice of removal. Deadlines for removal are provided by 28 U.S.C. § 1446(b):

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or

>otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b).

Thoratec was served with the petition on May 16, 2011 and filed its notice of removal on July 14, 2011, more than thirty days after being served with the petition. Thus, if the first paragraph of § 1446(b) provides the applicable thirty-day removal window, Thoratec's removal was untimely and the case must be remanded. If the first paragraph of § 1446(b) does not apply, then removal was timely.[1]

The Fifth Circuit has opined on "the standard for determining whether a notice of removal is timely field under the first paragraph of section 1446(b)." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002). In the context of removal based on diversity jurisdiction where the amount in controversy is uncertain, "[t]he time limit in the first paragraph is triggered 'only when that pleading *affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.'" *Id.* (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)) (emphasis in original). In the Fifth Circuit,

---

[1]The Court does not have to address the second paragraph of § 1446(b) and whether Tulane's dilatory exception was an "other paper from which it may *first* be ascertained that the case is one which is or has become removable." If the thirty-day removal window began upon service on May 16, 2011, it had already expired by July 14, 2011, and Tulane's dilatory exception would not give Thoratec a second chance for removal on the same grounds. *See* 14C Charles Alan Wright, et al., Federal Practice & Procedure § 3731 (4th ed. 2009) (explaining that the period for removal will not be "revived" "when any other change occurs or any other paper is interposed that shows a ground for removal that previously was palpable but was not invoked by the defendant"). But if the case stated by the petition was not removable, then the thirty-day window provided by the first paragraph § 1446(b) never began to run and Thoratec's removal was timely regardless of whether Tulane's dilatory exception started a thirty-day removal window under the second paragraph of § 1446(b).

"the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, [must] place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." *Chapman*, 969 F.2d at 163.  The Fifth Circuit has specifically "rejected a due diligence requirement for determining whether a case is removable," at least with respect to the amount in controversy.  *See Bosky*, 288 F.3d at 210.  Other courts have also held that diversity of citizenship must also be apparent from the facts contained in the initial pleading to make the case initially removable so as to trigger the thirty-day removal window under the first paragraph of § 1446(b).  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001) (document which did not disclose addresses of all defendants made it "impossible to assess whether there is complete diversity and, hence, a basis for removal.").

In support of remand, Plaintiff argues that the case stated by the petition served on Thoratec on May 16, 2011 was removable.  She argues that all of the information supporting the improper joinder argument was reasonably available to Thoratec within thirty days of service of the petition.  She suggests that Thoratec could have immediately found Tulane's certificate that it was a qualified healthcare provider on the Louisiana Patient's Compensation Fund website.  Then, Thoratec "could have conducted legal research to determine whether the petition's claims against [Tulane] are covered under the MMA."  (Rec. Doc. 14-1).  Thus, Plaintiff alleges that all of the elements for the improper joinder argument were "publicly accessible and easy to obtain" and Thoratec should have removed within thirty days of service of the petition.[2]

---

[2] Plaintiff relies on *Skidmore v. Beech Aircraft Corp.*, 672 F. Supp. 923 (M.D. La. 1987), for the proposition that a defendant has a duty to research to determine if a case is removable, but *Skidmore* has very different facts and limited applicability to the present circumstances.  In *Skidmore*, a plaintiff in Louisiana state court filed suit against multiple defendants and then settled with and released all but one diverse defendant; however, although the release named all

5

In opposition, Thoratec argues that the petition "does not allege medical malpractice within the meaning of the [MMA]" "because Plaintiff does not believe that [Tulane] committed medical malpractice as evinced by her motion to remand." (Rec. Doc. 28 at 3).  Although Thoratec also necessarily contends that Plaintiff is mistaken regarding the joinder question, Thoratec nonetheless argues that "it would be highly inequitable if this Court were to remand this case on the basis that a manufacturer defendant ... should somehow have had a different understanding of Plaintiff's claim against the medical provider defendant than Plaintiff does herself." *Id.* at 4.  Thoratec does not cite any authority on the issue of timeliness.

The scope and requirements of the MMA will be discussed below.  For the purposes of the timeliness analysis, it is enough to note that a plaintiff under Louisiana law may not bring a malpractice suit against qualified defendants without first having obtained an opinion from a Medical Review Panel.  Thus, the predicate for the improper joinder argument is both that the Plaintiff state a malpractice claim governed by the MMA, *and* that the Plaintiff has failed to satisfy the pre-suit requirements of the MMA by obtaining an opinion from a Medical Review Panel.  Even if Thoratec had some duty of reasonable diligence to conduct *legal* research regarding whether the claims stated in the petition are or are not governed by the MMA, the petition is silent regarding proceedings before a Medical Review Panel; thus, a critical element

---

the settling plaintiffs, the motion to dismiss the settling defendants omitted the name of one non-diverse settling defendant.  *See id.* at 924.  Thus, the suit inadvertently continued with incomplete diversity because the non-diverse settling defendant was not dismissed.  The non-settling, diverse defendant later sought to remove to federal court, but the district court denied the motion as untimely because the motion should have been filed within thirty days of the incorrectly-filed motion to dismiss, which "sufficiently allowed defendants to ascertain that the case at issue had become ripe for removal to federal court."  *Id.* at 926.  Factually, *Skidmore* is not on point, as Thoratec points out.

of the improper joinder argument is simply not apparent from the face of the petition.  The petition does not "affirmatively reveal on its face" the necessary ingredients that would make the case removable on the basis of diversity of citizenship and improper joinder.  Therefore, service of the petition did not begin the thirty-day removal window under the first paragraph of § 1446(b).  Whether or not Tulane's dilatory exception of prematurity started a thirty-day removal window on July 1, 2011, Thoratec's removal on July 14, 2011 was timely.

**B.     Plaintiff's Motion to Remand (Joinder) and Tulane's Motion to Dismiss**

Plaintiff also moves to remand for lack of subject matter jurisdiction.  Thoratec is a citizen of California, but Plaintiff and Tulane are citizens of Louisiana.  Complete diversity of citizenship is lacking unless some exception applies.  In opposing remand, Tulane and Thoratec argue that Plaintiff has failed to comply with the pre-suit Medical Review Panel procedures required by the MMA, and therefore Tulane was improperly joined.  Tulane has also filed its own motion to dismiss for the same reason.

   **1)     Improper Joinder Standard**

"The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity."  *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).  "To establish a claim for improper joinder, the party seeking removal must demonstrate either (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Id.* (quotation omitted).  Actual fraud in the pleading is not implicated here; with respect to the second prong, the court must examine "whether the [removing] defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no

7

reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* (quotation omitted). The removing defendant has the burden, and it is a heavy one. *See id.*

To determine if joinder was improper, the court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6)-type challenge, there is no improper joinder." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005) (quotation omitted).

In its notice of removal, Thoratec argued that Tulane was improperly joined because Plaintiff did not go through the requirements of the MMA before filing suit. Plaintiff moves to remand on the basis that complete diversity is lacking because it states a claim against Tulane not governed by the MMA. Tulane has filed a 12(b)(6) motion to dismiss on the basis that all of Plaintiff's claims are governed by the MMA, and the review panel procedure was not followed so Plaintiff's claims against Tulane are premature. Thus, Plaintiff's motion to remand and Tulane's motion to dismiss are tested under the same 12(b)(6) standard and depend on resolving whether Plaintiff's claims governed by the MMA, such that Plaintiff must proceed through a Medical Review Panel before filing suit.

### 2) Louisiana Medical Malpractice Act

The MMA governs malpractice claims against "healthcare providers." Tulane has submitted a Certificate of Enrollment establishing that at all material times it was a qualified healthcare provider under the provisions of the Act, and Plaintiff does not dispute that fact. The MMA defines "malpractice" as:

> any unintentional tort or any breach of contract based on healthcare or professional services rendered, or which should have been rendered, by a healthcare provider, to a patient, including failure to render services timely in the handling of a patient, including loading and unloading of a patient, and also includes the legal responsibility of a healthcare provider arising from acts or omissions ... from defects and/or failures of prosthetic devices implanted in or used on or in the person of a patient.

La. Rev. Stat. 40:1299.41(A)(13). The act defines "health care" as:

> any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement....

*Id.* at 40:1299.41(A)(9). All malpractice claims against healthcare providers must be reviewed by a Medical Review Panel, and a plaintiff cannot file suit until the "an opinion is rendered by the panel." La. Rev. Stat. § 40:1299.47(A), (B)(1)(a)(i). "In general, any conduct by a hospital complained of by a patient is properly within the scope of the [MMA] if it can reasonably be said that it comes within the definitions of the act, even though there are alternative theories of liability." *Rogers v. Synthes, Ltd.*, 626 So. 2d 775, 777 (La. App. 2 1993).

Several issues regarding the scope of the act are relevant to resolving the pending motions. First, intentional torts are not governed by the MMA. *See* La. Rev. Stat. 40:1299.41(A)(13). But merely labeling an act "intentional" in a pleading does not necessarily skirt the MMA. "Use of the word 'intent' in the pleadings is not a talisman that can convert unsubstantiated negligence allegations into colorable claims of true intentional torts for purposes of fulfilling an intentional tort exception to controlling legislation." *Richardson v. Advanced Cardiovascular Sys., Inc.*, 865 F. Supp. 1210, 1218-19 (E.D. La. 1994). Thus, courts should not be "swayed by semantic manipulations" that attempt to dress up simple negligence claims with labels of intentional torts, without factual allegations rising to the level of actual intentionally

tortious acts. *See id.*

Second, "malpractice" is not defined by the MMA, but the term does not include every claim against a healthcare provider. For example, purely ministerial actions unrelated to "health care" are not malpractice and do not have to proceed through Medical Review Panels. In *Garnica v. LSU Medical Center*, the plaintiff had a prosthesis implanted in her jaw in 1979 by the LSU Dental School, and in 1990 the manufacturer notified oral surgeons to stop using the implant. 744 So. 2d 156, 157 (La. App. 4 1999). The plaintiff later experienced problems with the implant and had to have it removed. She filed suit against the Dental School, alleging that if they had timely notified her of the product alert she would not have suffered damages. The Dental School filed an exception of prematurity, contending that the plaintiff should have proceeded through a medical review panel before filing suit. The lower court denied the exception of prematurity and the Fourth Circuit Court of Appeal affirmed, holding that "the duty to notify the patient is a ministerial or clerical function and does not require any specialized training or knowledge" and "did not arise from the performance of health care." *See id.* at 160. Therefore, the alleged failure to notify was not malpractice governed by the MMA.

Likewise, in *DeRouen v. Park Place Surgical Center, LLC* , the plaintiff had surgery in which a mesh patch was implanted. 37 So. 3d 525, 526 (La. App. 3 2010). A month after she was discharged from the hospital, the FDA recalled the patch. Plaintiff filed suit, alleging that the hospital received notice of the recall but failed to notify her which resulted in a delay and caused injury. Plaintiff requested a medical review panel, but also filed suit before the panel rendered an opinion. The hospital filed an exception of prematurity, which the trial court granted. The Third Circuit Court of Appeal reversed, concluding that "while the insertion of the

patch in the course of her surgery was related to the treatment that she received ... failure to notify is not 'treatment related'" but was only a "clerical or ministerial duty." *Id.* at 530.

In *Coleman v. Deno*, the Louisiana Supreme Court promulgated a six-part test for determining whether particular conduct is "malpractice" within the scope of the MMA.  813 So. 2d 303, 315 (La. 2002).  Those factors are: (i) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (ii) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (iii) whether the pertinent act or omission involved assessment of the patient's condition; (iv) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (v) whether the injury would have occurred if the patient had not sought treatment; and (vi) whether the tort alleged was intentional.  813 So. 2d at 316-18.

Nonetheless, if the pleading states malpractice claims against a qualified healthcare provider and the plaintiff has not completed the required Medical Review Panel process, courts routinely find that the healthcare provider has been improperly joined and deny motions to remand.  *See Garcia v. Covidien, Inc.*, No. 10-4184, 2011 WL 4550809 (E.D. La. Sept. 28, 2011); *Pardo v. Medtronic, Inc.*, No. 10-1562, 2010 WL 4340821 (E.D. La. Oct. 26, 2010); *Jones v. Centocor, Inc.*, No. 07-5681, 2007 WL 4119054 (E.D. La. Nov. 15, 2007).

**3)     Analysis**

As explained above, Plaintiff's motion to remand and Tulane's motion to dismiss are governed by the 12(b)(6) standard.  Accordingly, the Court looks to the state-court petition, in which Plaintiff made the following allegations regarding Tulane's conduct:

> Mr. Bush and petitioner returned to Louisiana where Mr. Bush began **followup, examination and treatment at Tulane Medical Center** regarding his failing heart condition and the function of the LVAS
> Beginning in early 2009 through May 2010, Mr. Bush **visited the Tulane Heart Failure Department to check his LVAS**, and was advised that there was [sic] no problems related thereto.
> ...
> Despite its duties to Mr. Bush, **Tulane failed to perform tests on the percutaneous lead necessary to detect damage as set forth in the recall notice**, and intentionally refused to perform its duty to inform patients of known defects in medical devices such as the LVAS and the need for re-operation and replacement.
> Additionally, both Thoratec and Tulane knowingly concealed known defects from the FDA and the results of the analysis of the LVAS in Mr. Bush, which constitutes fraudulent concealment.

(Pet., 1-2 at ¶¶ 5-6, 14-15) (emphasis added).

These allegations comfortably fall within the scope of a claim for medical malpractice governed by the MMA. Plaintiff has alleged that the decedent "began followup, examination and treatment" and that "Tulane failed to perform tests ... necessary to detect damage" to the LVAS. An allegation that a healthcare provider failed to perform a necessary test during a patient's examination and treatment is an assertion of malpractice in the course of healthcare. Thus, the MMA governs at least some of Plaintiff's claims and those claims, at the very least, must proceed through a Medical Review Panel. This is the case even if some of the claims involve only failure to give notice which may not be malpractice. *See Rogers v. Synthes, Ltd.*, 626 So. 2d at 777. Although the record suggests Plaintiff has begun that process, no opinion has been rendered. The claim is premature and Tulane was improperly joined in the initial petition as to that claim.

Plaintiff argues that she states other claims not governed by the MMA, and that Tulane was properly joined on those claims. For example, she argues that the MMA does not govern

her claim that Tulane failed to notify the decedent of warnings regarding his LVAS device. Relying on *Garnica* and *DeRouen*, she characterizes this as a ministerial failure to pass along the warning, and not a healthcare or treatment decision.  However, the *Garnica* and *DeRouen* cases are distinguishable.  In those cases, the plaintiffs had been discharged from care and there was no ongoing relationship with the defendant or any medical treatment of the plaintiff after the hospitals had notice of the product issues.  Here, according to the allegations in the petition, the decedent was being actively treated by Tulane at the same time Tulane allegedly had a "ministerial" duty to notify of the product issue.  Any "ministerial" duty to transmit a warning thus arose in the context of ongoing healthcare, unlike in *Garnica* and *DeRouen*, and a breach of that duty is necessarily intertwined with Plaintiff's malpractice claim.  Thus, it is appropriate to require the matter to proceed before the Medical Review Panel in the first instance.

Plaintiff also argues, in the context of the *Coleman* factors, that she has alleged intentional torts not governed by the MMA.  The *Richardson* decision is directly on point; although Plaintiff has used the words "intentionally" and "knowingly," she has not asserted any facts to back up those labels or to suggest that Tulane intended the decedent's death.  *See Richardson*, 865 F. Supp. at 1218-19.  To the extent she can support those allegations, they are "fair grist for a medical review panel."  *See id.* at 1219.

The parties also frame the allegations in terms of the *Coleman* factors, although Tulane argues that the Court need not apply the factors at all because the allegations unambiguously fall within the definition of "malpractice" and "health care" in the Act.  Even if it is necessary or appropriate to conduct a *Coleman* analysis, those factors support the conclusion that the Plaintiff has alleged claims for malpractice governed by the MMA.  The state-court petition clearly

alleges a failure to perform required tests during the course and scope of a provider-patient relationship, which directly implicates the first, second, third, and fourth *Coleman* factors.  And with respect to the sixth factor, as noted above, Plaintiff has not adequately alleged any intentional torts.

In short, the face of the petition alleges claims of malpractice against Tulane.  Those claims are premature because Plaintiff has not first complied with the applicable requirements of the MMA.  Plaintiff cannot state a claim against Tulane at this time, and Tulane was improperly joined.  Tulane's citizenship is therefore ignored for the purposes of analyzing diversity of citizenship.  Diversity of citizenship is present and Plaintiff's motion to remand is denied.  For the same reasons that Tulane was improperly joined, Tulane's motion to dismiss is granted and Plaintiff's claims against Tulane are dismissed without prejudice as premature.  *Cf. May v. Texaco, Inc.*, 73 F. App'x 78, 2003 WL 21756370, at *3 (5th Cir. June 19, 2003) (affirming denial of remand on basis of improper joinder and grant of improperly joined defendant's motion to dismiss).

**IV.   CONCLUSION**

For the foregoing reasons,  IT IS ORDERED that Plaintiff's motion to remand (Rec. Doc. 14) is DENIED and Tulane's motion to dismiss (Rec. Doc. 13) is GRANTED.  Plaintiff's claims against Tulane are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 24th day of October, 2011.

_____
UNITED STATES DISTRICT JUDGE